# CIRCUIT COURT OF THE CITY OF NORFOLK

Iva Delores Belvin,
Administratrix of the
Estate of David M. Belvin, Sr.,
Deceased

v.

H. K. Porter Co., Inc., and
Owens-Corning Fiberglass Corp.

## Case No. (Law) L88-3476

By JUDGE LEONARD B. SACHS

September 28, 1989

At the review of documents with Mr. Easter [counsel for defendant], I have made the following rulings. (Frances Zahn is the Court Reporter.)

1. The court makes a tentative ruling at this time a to the claim of privilege for the documents entitled "Litigation Support." The court holds at this time, subject to receipt of legal authorities and/or argument, that these are lawyers' notes and the claim of privilege will be sustained at this time.

Mr. Easter advises that he has prepared a memorandum of law which he will present to me to support his position. The record will indicate that every ruling adverse to Mr. Glasser [counsel for the plaintiff] or any of his co-counsel for the plaintiff will be preserved by objection.

2. Page 1144 of box 01 006 has been tentatively held to be a privileged document, but the defendant must give me specific information concerning the subject matter of this memo so that I can consider whether or not that will be my final decision. My final decision is reserved.

3. Item 01 007 1667 will tentatively be ruled to be not privileged unless and until the court is convinced by further evidence that I should change my mind. Specifically, I will want to see, if possible, the letter of June 26, 1964, which apparently was sent from H. J. Welter of the Milwaukee plant to Mr. W. C. Taylor. Also, I want to know who F. H. Edwards in Toledo was.

I also want to know who wrote the handwritten note on this that says "cleared letter with legal and PR departments so as to now incur liability." (This is in pencil.)

4. Item 01 008 1371, a letter to R. L. Logan, Jr., in Toledo from W. C. Taylor dated January 8, 1965, copy to Mr. O. W. Pfeiffer title "*Kaylo Insulation Composition*" is not privileged and is subject to discovery. The objection of the defendant to this ruling is noted.

5. Item 01 009 1270, et seq., are not privileged and are discoverable.

6. A ruling by classification. The following documents will not be considered privileged as a *class*:

(a) Any correspondence from any physician to any member of the law department or any other person even if that physician is a member of the staff of OCF. Such letters or memos will not be privileged if it is reporting scientific or medical information to the other party. It will be no defense to the claim of discoverability that the law department requested that information.

(b) The same will be held for any scientist communicating with the law department as the above ruling.

(c) The same will be true as to any correspondence from any scientist or physician to any other person in or out of the corporation whether or not the same has been passed through the law department for clearance on potential liability if it relates to scientific or medical

facts or formula which are not otherwise protected by proprietary interests.

(d) Any photocopy of any publication whether prepared and published by the defendant or anyone else will not be privileged.

(e) The following items will be privileged as a class as can be ascertained from the indices: any document or correspondence from any member of the defendant OCF pertaining to proposed patented or patentable products, including conversation concerning the content of those products, is privileged as proprietary information.

(f) Any document from any member of the marketing staff to any other member of the marketing staff concerning competitive position and competitors position relative to their own with respect to any product concerning testing, marketing, advertising, etc., and developing strategy for competition is privileged as proprietary information.

7. As a general ruling, the defendant will produce over his objection all medical reports, medical bills, medical articles concerning plant employees, any publication which has been photostated and included in defendant's files with the marginal notes of the lawyers in the law department or the underlining by the lawyers sanitized by removing the underlines and the marginal notes and copying a clean copy if it does not destroy any of the text. In other words, it must be produced with those safeguards for counsel.

8. The Court will permit the discoverability of 01 029 0402 subject to the defendant's strenuous objection. I believe this is a letter from a doctor to the law department. I do not believe that it asks for a legal ruling but is simply passing on information for the legal department to consider, and that particular question to be considered is "how many states will allow suit to be brought against negligent manufacturers despite the existence of a Workmen's Compensation Law."

The last paragraph of the letter dated January 22, 1965, which is numbered in the filing system as 01 029 0402 will not be admissible in any trial, either on a case in chief or for cross-examination or for rebuttal, only paragraphs 1 and 2.

Upon request of counsel for defendant, concurred in by the court, the defendant is permitted to remove

the final paragraph of that letter and tender it as sanitized. And should it become an exhibit at trial, the court will explain that the final paragraph has no bearing on the triable issues in the case.

October 10, 1989

The question of attorney-client privilege has been raised by Owens-Corning Fiberglass (OCF) with respect to the privileged status of certain documents in their possession.

Specifically, these documents include memoranda prepared by the legal department of that corporation for their employer to evaluate which of the documents in their depository would be entitled to a claim of attorney-client privilege. These memoranda are on forms prepared by the legal department, presumably for that purpose.

Many of the documents which the legal department were classifying were documents which were routed through the legal department either for the information of the legal department or for evaluation by the legal department or for opinion by the legal department or any combination of or all of those purposes.

We are concerned solely with those which contain information or opinions concerning asbestos, asbestos products manufactured by OCF and the product knowledge of OCF obtained from various sources, institutions, and literature on the hazards of asbestos.

The relationship of attorney and client is defined specifically in Part Six of the Rules of Court, Section I(B) and specifically in Section I(B)(1) (Rules of the Supreme Court of Virginia) where it is stated that:

> *Specifically, the relationship of attorney and client exists*, and one is deemed to be practicing law *whenever* --
> (1) *One undertakes* for compensation, direct or indirect, *to advise another, not his regular employer*, in any matter involving the application of legal principles to facts or purposes or desires. (Emphasis supplied).

Accordingly, the court holds that under the laws of Virginia and the facts of this case, the defendant OCF is not entitled to the claim of attorney-client privilege with respect to those documents defined above, except as to those which evaluate a proprietary interest as defined in the prior memoranda of this court on this case or prepared and produced by the legal department of OCF *at the request of* and *for the use of* outside counsel, in which case that material would not be discoverable except under extraordinary circumstances.

Among those extraordinary circumstances which would result in the disclosure of material otherwise protected by the Hickman rule would be material which would disclose a fraud perpetrated by the employer of the legal department or the legal department to be perpetrated or already perpetrated upon some person, firm, corporation, or legally constituted tribunal.

## October 13, 1989

Owens-Corning Fiberglass filed a motion for reconsideration and for injunctive relief on the morning of October 13th at 9:00 a.m. in open court requesting that the court vacate the order entered pursuant to its opinion letter dated October 10, 1989.

Simultaneously, Owens-Corning Fiberglass lodged with the court with the Honorable John W. Winston a petition for declaratory relief and injunctive relief with respect to the order of this judge, alleging that the order of this judge was "void" on the grounds that it has exceeded the authority of this court and violated Rule 4:1(b)(1).

In addition this judge was served by a process server (not a sheriff) at approximately 4:00 p.m. on October 13th with a petition for prohibition and/or mandamus addressed to the Supreme Court of Virginia on essentially the same grounds as the Bill of Complaint addressed to Judge Winston.

Both of these petitions are guilty of begging the issue. The question is "What is privileged?"

Attorney-client privileges in Virginia regardless of what it is in other jurisdictions is clearly defined in the Rules of Court, Part Six, Integration of the State

Bar, Section I. Unauthorized Practice Rules and Consideration.

Under Rule 1(B) the rule states in part:

It is from the relation of attorney and client that any practice of law must be derived . . . .

*Generally*, the relation of attorney and client exists, and one is deemed to be practicing law whenever he furnishes to another advice or service under circumstances which imply his possession and use of legal knowledge or skill.

*Specifically, the relation of attorney and client exists*, and one is deemed to be practicing law *whenever*--

(1) *One undertakes* for compensation, direct or indirect, *to advise another, not his regular employer, in any matter involving the application of legal principles to facts or purposes or desires.*

(2) One, *other than as a regular employee acting for his employer*, undertakes, with or without compensation, to prepare for another legal instrument of any character, other than notices or contracts incident to the regular course of conducting a licensed business. (Emphasis supplied by the court).

Whatever the law may be elsewhere, the relationship of attorney and client is defined in Virginia by the preceding rules of court, and that relationship as defined must be the predicate for determining whether or not the attorney-client privilege exists.

In this State under the rules and law of this State and the facts of this case, the privilege does not exist because the relationship of attorney-client does not exist between the lawyers in the OCF legal department and the corporation by which they are employed.

Accordingly, the relief requested is denied.

The Court inadvertently in its letter of October 10th failed to include as privileged any documents or opinions or papers of any description prepared by house counsel for outside counsel whether requested by outside

counsel or not for the purpose of advising outside counsel on matters under consideration by outside counsel obtained by the corporation employer of house counsel: in this case OCF.

October 24, 1989

This memorandum opinion is written to consolidate a series of prior rulings in this case.

### The Facts

This is a suit for wrongful death alleged to have resulted from the exposure of plaintiff's decedent to asbestos fibers while employed at the Newport News Shipbuilding and Drydock Co. (NNSY). It is alleged that the asbestos fibers came from products manufactured and distributed by the defendants who sold their products to NNSY for incorporation into ships built and overhauled at that shipyard.

This is one case in the mass tort litigation commonly referred to as The Asbestos Cases.

Counsel for plaintiff in this case have represented to the Court that beginning in the mid to late 1970's they have routinely propounded Interrogatories and Requests for Production of Documents to OCF in every lawsuit in which OCF was a party in order to identify various documents relating to the facts which plaintiff considered necessary to establish liability in each case against OCF (and others).

Counsel for plaintiff, David Belvin, filed this suit in November, 1988, only a few weeks after the plaintiff was diagnosed with the disease of mesothelioma. Mr. Belvin died in May, 1989, and his widow qualified for purposes of this wrongful death suit.

In June, 1989, plaintiff propounded their "standard" Interrogatories and Request for Production of Documents. In July, 1989, counsel for OCF advised counsel for plaintiff and co-defendants that they had at their offices in Richmond a cache of documents which they referred to as the "OCF Depository." This depository is represented by OCF to be the only *complete* collection of papers and documents ever in their possession which relates to asbestos generally

and their asbestos products specifically. These documents are stored in file boxes which are one cubic foot boxes. There are said to be 300 or more of these boxes containing over one million documents, which were reviewed and numbered. With respect to documents claimed to be privileged, OCF has an Index of 255 pages for pre-1973 documents. There are twelve boxes of pre-1973 documents which are claimed to be privileged and approximately thirty boxes of post-1973 documents for which OCF has asserted the claim of privilege.

The plaintiff's attorneys in this case enlisted the aid of counsel for plaintiffs in asbestos cases around the country to assist them in the search of the boxes of material which were tendered to them in response to the Request for Production. Plaintiff's counsel advised the Court that they were permitted to bring no more than five people at any one time to search these boxes and review these documents because of space constraints. Plaintiff's counsel stated to the Court that during this past summer, five lawyers, each of whom was very experienced in asbestos litigation, spent five weeks searching these files and did not finish the search prior to commencement of this trial.

OCF set aside twelve boxes of material on which they asserted that the contents were privileged. The principle claim of privilege was the attorney-client privilege. In addition, the defendant OCF claimed that certain documents were entitled to the work product privilege delineated in *Hickman v. Taylor* [329 U.S. 495 (1947)]. There was a claim of proprietary privilege asserted with respect to a number of documents dealing with proposed ideas to be patented, formulae and marketing strategies.

A large percentage of documents claimed to be privileged are the memoranda of OCF house counsel which were on forms prepared by them. These brief printed forms were used by house counsel when they went through their collection of material (presumably about three hundred boxes) in 1980 to review these documents, analyze the contents of each, and categorize each and assign a number to each document in the category to which each document was assigned.

Starting in 1988, Virginia counsel for OCF received the document collection now referred to as the "Depository" and began a systematic review of each paper. Each paper

received a number which permits ready reference to the box in which the document is contained as well as a page number.

Plaintiff contested the claim of attorney-client privilege by OCF with respect to the work of house counsel. Counsel for plaintiff asked the Court to review these twelve boxes for which a claim of privilege was asserted on the entire contents *in camera*. It took the Court the better part of one day to review and rule upon the contents of the first box on a page-by-page basis. The contents of that box had a variety of papers.

By letter memorandum dated September 28, 1989, the Court made the first of a series of rulings on these documents.

By letter memorandum opinion dated October 10, 1989, the court dealt with the question of the attorney-client privilege which had been raised by Owens-Corning Fiberglass (OCF) with respect to the privileged status of certain documents in their possession.

Specifically, these documents include memoranda prepared by the legal department of that corporation for their employer to evaluate which of the documents in their depository would be entitled to a claim of attorney-client privilege. These memoranda are on forms prepared by the legal department, presumably for that purpose.

Many of the documents which the legal department were classifying were documents which were routed through the legal department either for the information of the legal department, or for evaluation by the legal department, or for opinion by the legal department, or any combination of or all of those purposes.

We are concerned solely with those which contain information or opinions concerning asbestos, asbestos products manufactured by OCF, and the product knowledge of OCF obtained from various sources, institutions, and literature on the hazards of asbestos.

In its letters to counsel dated October 10, 1989, and October 13, 1989, the Court held that communication between house counsel and outside private counsel retained by the firm to act as counsel on a designated legal matter were entitled to the protection of the attorney-client privilege. The Court reserved for decision the question

which would be presented if those documents contained evidence of a fraud upon the Court.

However, the Court also held that other correspondence, memos, and opinions of the legal department of OCF addressed to other corporate employees, departments, and officers would not be protected by an attorney-client privilege.

## The Law

The relationship of attorney and client is defined "generally" in Part Six of the Rules of Court, Section I(B), and "specifically" in Section I(B)(1) and (2) (Rules of the Supreme Court of Virginia). (See Post).

Based solely upon these Rules of Court, the Court held that, under the laws of Virginia and the facts of this case, the defendant OCF was not entitled to claim the attorney-client privilege with respect to those documents defined except as to those prepared and produced by the legal department of OCF for the use of outside counsel (in which case the court held that material would not be discoverable except under extraordinary circumstances).

Among those extraordinary circumstances which could result in the disclosure of material otherwise protected by the attorney-client privilege would be material which would disclose a fraud perpetrated or to be perpetrated by the employer or the legal department upon some person, firm, corporation, or legally constituted tribunal.

Owens-Corning Fiberglass filed a motion with the Court for reconsideration and for injunctive relief on the morning of October 13th at 10:00 a.m. in open court requesting that the court vacate the order entered pursuant to its opinion letter dated October 10, 1989.

Simultaneously, but without advising this judge of its actions, Owens-Corning Fiberglass lodged with the court's secretary for the attention of the Honorable John W. Winston, one of the judges of this court, a petition for declaratory relief and injunctive relief with respect to the order of this judge, alleging that the order of this judge was "void" on the grounds that it had exceeded

the authority of this court and violated Rule 4:1(b)(1).[1] OCF asked the secretary to set this down to be heard by Judge Winston at 3:00 p.m. that same afternoon (October 13, 1989).

In addition, while on recess, this judge was served in the hallway of the Courthouse by a process server (not a sheriff) at approximately 4:00 p.m. on October 13th with a Petition for Writ of Prohibition and/or Mandamus addressed to the Supreme Court of Virginia on essentially the same grounds as the Bill of Complaint addressed to Judge Winston. Counsel for OCF had not told this judge that it intended to file such a petition or that he would be served with the notice of filing same.

At approximately five minutes by five p.m. on October 13th, counsel for the plaintiff was advised by fax that the Supreme Court had denied the Writ of Prohibition and/or Mandamus and relayed that information to the Court.

On the 17th of October, this judge received a copy of the order of the Supreme Court of Virginia in response to that petition which stated that the petition was denied because the "writ did not lie" upon the facts of the case.

Both of these petitions were guilty of begging the issue. The fundamental question is "When is there an attorney-client relationship?"

---

[1] Rule 4:1. General Provisions Governing Discovery.
(b) Scope of Discovery. -- Unless otherwise limited by order of the court in accordance with these Rules, the scope of discovery is as follows:
(1) In General. -- Parties may obtain discovery regarding any matter, NOT PRIVILEGED, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. (Emphasis added by Court.)

*The Virginia Rules of Court*

Attorney-client privilege in Virginia, regardless of what it is in other jurisdictions, is clearly defined in the Rules of Court, Part Six, *Integration of the State Bar, Section I, Unauthorized Practice Rules and Considerations.*

Under Rule 1(B) the rule states in part:

*It is from the relation of attorney and client that any practice of law must be derived . . . .*

*Generally, the relation of attorney and client exists,* and one is deemed to be practicing law *whenever . . . [one] furnishes to another advice or service under circumstances which imply his possession and use of legal knowledge or skill.*

*Specifically, the relation of attorney and client exists,* and one is deemed to be practicing law *whenever --*

(1) *One undertakes* for compensation, direct or indirect, *to advise another, not his regular employer, in any matter involving the application of legal principles to facts or purposes or desires.*

(2) One, *other than as a regular employee acting for his employer,* undertakes, with or without compensation, to prepare for another legal instrument of any character, other than notices or contracts incident to the regular course of conducting a licensed business. (Emphasis supplied by the court).

*The Legal Ethics Opinion*

On the 18th of October, the court learned of an opinion of the Legal Ethics Committee of the Virginia State Bar reported in the October, 1989, issue of the *Virginia Lawyer Register,* which is the official publication which contains the Rules of Court, Notices of Disciplinary Action, Unauthorized Practice of Law actions, etc., which is published by the Virginia State Bar (not the Virginia State Bar Association) which regulates and administers

the practice of law in Virginia. This *Register* is somewhat analogous to the *Federal Register*.

This opinion, designated as "LEO (Legal Ethics Opinion) # 1172" dealt with an analogous problem concerning the attorney-client relationship between a corporate employer and a former lawyer employee.

The opinion is set forth at length in [the appendix to this opinion]; however, the holding of the Legal Ethics Committee of the Virginia State Bar in rendering this opinion was that the:

> *attorney-client relationship could not have existed since at the time the attorney obtained the information . . . the attorney was acting under the direction of his employer*; therefore, any information obtained in the course of his employment as agent for employer could not be protected as a secret or confidence pursuant to DR 4-101. (Emphasis supplied).

The opinion cites as authority DR 4-101 and Part 6, Section I(A), Virginia Code of Professional Responsibility. This committee opinion was dated December 19, 1988, but first published in the *Register* of the Virginia State Bar in the October, 1989, *Register*. Its existence was not previously known to the court and in the ordinary course of things would have only been known to those on the Legal Ethics Committee and the parties who submitted the question to the Committee for opinion.

It is well understood as a principle of administrative law that the opinion of the administrative agency construing the statutes and regulations within its area of responsibility, while not binding on a court, is entitled to great weight. 4A Michie's Jurisprudence, *Conflict of Laws*, sect. 38.

### Conclusion

The relationship of attorney and client is defined in Virginia by the preceding rules of court, and of necessity that relationship as defined must exist and be the predicate for determining whether or not the attorney-client privilege exists.

The Court held in its memorandum of October 13, 1989, that in this State under the Rules of the Supreme Court and law of this State and the facts of this case, the privilege does not exist because the relationship of attorney-client does not exist between the lawyers in the OCF legal department and the corporation by which they are employed.

Accordingly, the relief requested was denied in part.

In its memorandum of October 13, 1989, the court further held as privileged any documents or opinions or papers of any description prepared by house counsel for the use of outside counsel whether requested by outside counsel or not for the purpose of assisting outside counsel on matters then actively under consideration by outside counsel.

OCF has stated that since the OCF corporate offices are located in Ohio where corporate counsel do their work that the law of attorney-client privilege ought to be judged under the law of Ohio.

The court disagrees. Under the universally acknowledged and accepted rules of conflict of laws, those matters pertaining to the admissibility of evidence and procedure will be regulated by the law of the forum: in this case Virginia. 1A Michie's Jurisprudence, *Administrative Law*, sect. 8.

## APPENDIX

LEO # 1172. *Attorney-client relationship -- confidentiality -- in-house counsel: using information gained during the regular course of business for attorney's benefit.*

An attorney was employed in the patent legal department of Corporation A, during which time he investigated Competitor who was engaged in a franchising effort and a pending patent application, the existence of which concerned employer, Corporation A.

The attorney is no longer employed at Corporation A but was contacted by Competitor once the patent application had been issued to inquire whether the unidentified third party/employer was still interested in obtaining a franchise. The attorney then reported that the third

party was no longer interested but that he personally was interested.

Disciplinary Rule 4-101(B)(3) provides that a lawyer shall not knowingly use a confidence or secret of his client for the advantage of himself or a third person unless the client consents after full disclosure. *Under the facts of the inquiry, it appears an attorney-client relationship could not have existed since at the time the attorney obtained the information from Competitor regarding the patent application, the attorney was acting under the direction of his employer; therefore, any information obtained in the course of his employment as agent for employer could not be protected as a secret or confidence pursuant to DR 4-101. The committee opined that it would not be improper for the attorney-employee who, in the course of his employment, gained information on which he will now rely, in part, to pursue obtaining a franchise of Competitor. Since the attorney-client relationship has not been established, the propriety of obtaining a client's consent would be irrelevant. [DR 4-101, DR 4-101(B)(3) and Part 6, Section I(A), Virginia Code of Professional Responsibility].* (Emphasis supplied.)

Committee Opinion
December 19, 1988